IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 09-339 |
| | ) |
| JAY GREGORY MATHIS | ) |

MEMORANDUM AND ORDER

Gary L. Lancaster,                        January 3, 2012
Chief Judge.

        This is a criminal action. Before the court is defendant Jay Mathis' motion to suppress DNA evidence. In his motion to suppress, Mr. Mathis argues that the DNA evidence was obtained in violation of his Fourth Amendment rights, because correctional officers used unreasonable force to execute the warrant. The government argues that the correctional officers' use of force is irrelevant to the suppression of the DNA, and that, in any case, the force used was reasonable.

        For the reasons set forth below, the court will deny the motion to suppress.

I. FINDINGS OF FACT

        On January 8, 2009, a man entered a National City Bank in Pittsburgh, PA, brandishing a weapon. The bank security

guard drew his firearm, and when the man did not drop his weapon, the guard pursued him. The man fired a shot at the guard; the guard returned fire, but the man escaped. Following the man's escape, Pittsburgh police discovered a blood trail in the alley down which he fled. The police collected a blood sample, which yielded a DNA profile in the National DNA Indexing System matching that of defendant Jay Mathis.

The Allegheny County Crime Lab requested a whole blood sample from Mr. Mathis to verify the authenticity of the DNA profile match. After obtaining a warrant from the District Court for the Western District of Pennsylvania, an FBI agent collected a buccal swab ("Swab #1") sample from Mr. Mathis at FCI-Cumberland, Maryland, where he was incarcerated for violating supervised release conditions from an unrelated criminal conviction. Mr. Mathis complied with the warrant without incident. The crime lab issued a report showing a match between the DNA found in the alley and the DNA extracted from Swab #1.

The prosecutor had concerns about the jurisdictional validity of the Western District of Pennsylvania warrant;[1] however, a second warrant was obtained in the Northern District

---

[1] Under Federal Rule of Criminal Procedure 41(b), a magistrate judge has authority to issue a warrant to search for and seize a person or property located within the district. Defendant was not located in the Western District of Pennsylvania when Swab #1 was collected.

2

of Ohio, where defendant resided following his transfer to the Northeast Ohio Correctional Center. When an FBI agent attempted to execute this second warrant, Mr. Mathis refused to comply. The assistant warden, after a discussion with the FBI agent and the prosecutor, ordered that Mr. Mathis be physically escorted from his cell to the medical area to provide the sample. When correctional officers tried to escort Mr. Mathis to the medical area, he insisted on speaking to his attorney and reiterated that he refused to give another DNA sample. Out of sight of the FBI agent, the officers sprayed Mr. Mathis with pepper spray, wrestled him to the ground, and placed him in handcuffs.

Thereafter, Mr. Mathis was decontaminated in a shower and brought into the medical area of the jail where the FBI agent was waiting. The FBI agent then collected the buccal swab ("Swab #2") without further incident.

Shortly thereafter, the Allegheny County Crime Lab informed the FBI agent that the sample was collected with an incorrect kit, and the agent obtained a third warrant. When the agent arrived to execute the third warrant, Mr. Mathis was constrained by handcuffs; however, he acquiesced to the buccal swab collection ("Swab #3") because he believed that if he resisted he would again be sprayed and tackled.

The government has indicated that it intends to offer Swab #3 into evidence at trial.

## II. LEGAL STANDARD

Evidence obtained through illegal search and seizure is not admissible against the accused in a criminal case. Weeks v. United States, 232 U.S. 383, 391-92 (1914). Illegal searches and seizures include those conducted without a warrant and not subject to an exception to the warrant requirement, as well as those conducted based on invalid warrants. See, e.g., Kentucky v. King, 131 S.Ct. 1849, 1856 (2011); Herring v. United States, 555 U.S. 135, 142 (2009).

However, even a search or seizure pursuant to a valid warrant can be illegal if it is "unreasonable." See Ybarra v. Illinois, 444 U.S. 85, 101 (1979) ("The restrictions on a policeman's authority to search pursuant to a warrant derive, of course, from the first clause of the [Fourth] Amendment, which prohibits all 'unreasonable' searches, whether those searches are pursuant to a warrant or not."). When dealing with intrusions into the human body, the Fourth Amendment constrains intrusions which "are not justified in the circumstances, or which are made in an improper manner." Schmerber v. California, 384 U.S. 757, 768 (1966).

Specifically, the test is whether the "means and procedures employed" in taking the sample "respected relevant Fourth Amendment standards of reasonableness." Id. Prisoners

4

do not forfeit all their constitutional protections, Bell v. Wolfish, 441 U.S. 520, 545 (1979), but the Fourth Amendment rights of prisoners may be somewhat curtailed to be consistent with the objectives of the correctional system, Padgett v. Donald, 401 F.3d 1273, 1278-79 (11th Cir. 2005). In other words, when a search or seizure involves a legally incarcerated individual, any evaluation of reasonableness must consider the context of the prison environment.

III. DISCUSSION

Defendant's challenge is not to the lawfulness or existence of the warrant for Swab #3, or the sufficiency of the affidavit of probable cause used to obtain the warrant, nor does he argue that the warrant was otherwise invalid. Rather, defendant identifies two ways in which the execution of the warrant was unreasonable: (1) he was not given the opportunity to speak to counsel prior to execution of the warrant; and (2) he complied with the warrant only because of his fear, based on the events of the prior seizure, that physical force would be used against him.

The defense has failed to direct the court to any rule of law granting a right to consult with counsel prior to the execution of a lawful warrant. This is not surprising, because it is simply not the law. See, e.g., United States v. Lewis,

5

483 F.3d 871, 874 (8th Cir. 2007) (holding that the collection of defendant's DNA without prior consultation with counsel did not violate his Sixth Amendment right to counsel, because it was not a "critical stage" of the proceeding). Therefore, it was not unreasonable for the government to collect the buccal swab samples without permitting Mr. Mathis to first consult with his attorney.

Nor is the government required to obtain the consent of the subject of a search and seizure warrant before executing that warrant. Here, although the prison guards used forceful means to obtain Mr. Mathis' cooperation with respect to Swab #2, we do not find under the circumstances that the force used was unreasonable. Mr. Mathis clearly conveyed to prison staff that he was unwilling to voluntarily go to the medical area. But once he got there, no additional force was applied in the execution of the warrant for Swab #2.

The FBI agent executed the warrant for Swab #3 without the use of any force. That Mr. Mathis voluntarily complied with the execution of the warrant for Swab #3 due to a subjective fear of force does not mean his rights were violated. Therefore, there was no violation of Mr. Mathis' constitutional rights, and the court will not suppress the DNA evidence obtained from Swab #3.

IV. **CONCLUSION**

Accordingly, defendant's motion to suppress is DENIED.

BY THE COURT:

/s/ Gary L. Lancaster

Gary L. Lancaster,
Chief United States District Judge

cc: All Counsel of Record